2024044004
11-29-24

**CORPORATE CREATIONS**
Registered Agent • Director • Incorporation

**Corporate Creations Network Inc.**
801 US Highway 1 North Palm Beach, FL 33408

Werner Enterprises, Inc.
Sandy Wagner
14507 Frontier Road
Omaha NE 68138
United States

June 18, 2026

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s). **ALL information should be verified by you.**

Item: 2026-185G

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

| | | |
|---|---|---|
| 1. | **Entity Served:** | Werner Enterprises, Inc. |
| 2. | **Title of Action:** | Tara Umbrino, et al vs. Werner Enterprises, Inc. d/b/a Werner Enterprises, Inc. of Nebraska. |
| 3. | **Document(s) Served:** | Letter from Secretary of State<br>Complaint<br>City of Charlottesville Circuit Court |
| 4. | **Court/Agency:** | City of Charlottesville Circuit Court |
| 5. | **State Served:** | Virginia |
| 6. | **Case Number:** | 540CL26000-35300 |
| 7. | **Case Type:** | Personal Injury / Negligence / Damages |
| 8. | **Method of Service:** | Hand Delivered |
| 9. | **Date Received:** | Wednesday 06/17/2026 XX |
| 10. | **Date to Client:** | Thursday 06/18/2026 |
| 11. | **# Days When Answer Due:**<br>**Answer Due Date:** | 21<br>Wednesday 07/08/2026<br>CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:**<br>(Name, City, State, and Phone Number) | Kevin Biniasan<br>Richmond, VA |
| 13. | **Shipped To Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 471 |
| 16. | **Notes:** | None |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process. To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective. It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.



EXHIBIT
1
tabbles

# COMMONWEALTH OF VIRGINIA

CHARLOTTESVILLE CIRCUIT COURT
Civil Division
315 EAST HIGH STREET
CHARLOTTESVILLE VA 22902
(434) 970-3766

Summons

To: WERNER ENTERPRISES, INC
CORP CREATIONS NETWORK INC
425 W. WASHINGTON ST.STE.-4
SUFFOLK VA 23434

Case No. 540CL26000353-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Friday, June 12, 2026

Clerk of Court: LLEZELLE AGUSTIN DUGGER

by Williams
(CLERK/DEPUTY CLERK)

Instructions: COMPLAINT

Hearing Official:

Attorney's name: BINIASAN, KEVIN
2100 EAST CARY STREET
SUITE-310
RICHMOND VA 23223

# COMMONWEALTH OF VIRGINIA

CHARLOTTESVILLE CIRCUIT COURT
Civil Division
315 EAST HIGH STREET
CHARLOTTESVILLE VA 22902
(434) 970-3766

## Proof of Service

Virginia:
In the CHARLOTTESVILLE CIRCUIT COURT

Case number: 540CL26000353-00
Service number: 001
Service filed: June 12, 2026
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: TARA UMBRINO vs WERNER ENTERPRISES, INC

Service on: WERNER ENTERPRISES, INC
CORP CREATIONS NETWORK INC
425 W. WASHINGTON ST.STE.-4
SUFFOLK VA 23434

Attorney: BINIASAN, KEVIN
2100 EAST CARY STREET
SUITE-310
RICHMOND VA 23223

Instructions: COMPLAINT

Returns shall be made hereon, showing service of Summons issued Friday, June 12, 2026 with a copy of the Complaint filed Friday, June 12, 2026 attached.

Hearing date :
Service issued: Friday, June 12, 2026

---

For Sheriff Use Only

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF CHARLOTTESVILLE

**TARA UMBRINO,**
**ADMINISTRATOR OF THE ESTATE**
**OF SARAH ANN BROWN-WILLIAMS**

**Plaintiff,**

**v.**

**CASE NO.** CL26-353
**TRIAL BY JURY DEMANDED**

**WERNER ENTERPRISES, INC.**
**d/b/a WERNER ENTERPRISES, INC.**
**OF NEBRASKA,**
Serve: Corporate Creations Network Inc.
425 W. Washington St., Ste 4
Suffolk, Virginia 23434

**and**

**GOYAT TRUCKING, INC.,**
Serve: Truck Process Agents of America, Inc.
600 Twenty-Ninth Place Court, #1017
Charlottesville, Virginia 22901

**and**

**HARPINDER SINGH,**

**Defendants.**

## COMPLAINT

COMES NOW Plaintiff, Tara Umbrino, Administrator of the Estate of Sarah Ann Brown-Williams, by and through counsel, and submits the following for their Complaint against the Defendants.

## PARTIES

1. Plaintiff, Tara Umbrino, is a resident of Virginia and the duly qualified administrator of the Estate of Sarah Ann Brown-Williams (hereinafter "Brown-Williams"). A true copy of the Certificate of Qualification is attached hereto as Exhibit A.

2. Brown-Williams was a citizen of North Carolina at the time of her death.

3. Defendant Werner Enterprises, Inc. (hereinafter "Werner") is a foreign corporation formed in the State of Nebraska with its principal place of business in Omaha, Nebraska and registered to engage in business throughout the Commonwealth of Virginia as Werner Enterprises, Inc. of Nebraska.

4. Defendant Werner appointed Corporate Creations Network, Inc. located at 425 W. Washington Street, Suite 4, Suffolk, Virginia 23434 as its registered agent in the Commonwealth of Virginia.

5. Defendant Werner owned the trailer involved in the subject car accident.

6. Defendant Goyat Trucking, Inc. (hereinafter "Goyat Trucking") is a foreign corporation with its principal place of business in Fresno, California. Goyat Trucking has never been registered to engage in business in the Commonwealth of Virginia.

7. Truck Process Agents of America, Inc., located at 600 Twenty-Ninth Place Court #1017, Charlottesville, Virginia 22901, has been appointed as Goyat Trucking's registered agent in the Commonwealth of Virginia by operation of law.

8. Defendant Goyat Trucking owned the tractor involved in the subject car accident.

9. Defendant Harpinder Singh (hereinafter "Singh") was the driver of the tractor-trailer at the time of the subject car accident.

10. Defendant Singh's current residence is unknown to Plaintiff.

11. At the time of his arrest in Wythe County, Virginia, Defendant Singh was domiciled in the Commonwealth of Virginia.

12. Upon information and belief, at all times relevant, Defendants Werner and Goyat Trucking entered into and operated under an agreement that an agent, employee, servant, or independent contractor of Goyat Trucking would transport goods for Werner.

13. At all relevant times, Defendant Singh was an employee, agent, or independent contractor acting on behalf of and within the scope of his employment, agency, or contractual relationship with Defendants Goyat Trucking and Werner. Additionally, at all relevant times, Goyat Trucking and Singh were acting within the scope of their duties and in the execution of services for which they were engaged under contract with Werner.

## VENUE AND JURISDICTION

14. This Court has jurisdiction over the parties, and venue is proper in this Court, as Defendant Goyat Trucking's registered agent, Truck Process Agents of America, Inc., is located in Charlottesville, Virginia.

15. This Court is the most convenient forum for this dispute in light of the presence of foreign witnesses, witnesses in various jurisdictions stretching the I-95 and I-81 corridors in the Commonwealth of Virginia, among other factors.

## FACTUAL ALLEGATIONS

16. Plaintiff hereby incorporates by reference every allegation asserted in this Complaint, as if fully set forth herein.

### Oversight by Federal Motor Carrier Safety Administration

17. The Federal Motor Carrier Safety Administration (hereinafter "FMCSA") was established within the Department of Transportation on January 1, 2000, pursuant to the Motor Carrier Safety Improvement Act of 1999 (49 U.S.C. 113).

18. The FMCSA's primary mission is to prevent commercial motor vehicle-related fatalities and injuries.

19. Activities and regulations of the FMCSA, when followed, contribute to safer highways and roadways in the Commonwealth of Virginia and throughout the United States of America.

20. Among the FMCSA's activities is enforcement of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSR").

21. The FMCSR create minimum safety standards for interstate motor carriers, brokers, shippers, and others qualifying entities.

22. Among its most important minimum requirements is the FMCSR's requirements surrounding driver qualifications.

23. The FMCSR prohibits a motor carrier from permitting a person to drive a commercial motor vehicle unless that person is qualified to do so. These minimum qualifications include: (1) Age: at least 21 years old; (2) English Proficiency: can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records; (3) Ability to Safely Operate the Commercial Vehicle: demonstrates through experience, training, or both, ability to safely operate the commercial motor vehicle; (4) Physical Qualification and Medical Certification; (5) Valid Commercial Driver's License; (6) Record of Violations: must prepare or furnish the motor carrier that employs him with the list of violations or certificate that

he has none; (7) Not Disqualified: cannot be disqualified to drive a commercial vehicle for reasons otherwise defined in the FMCSR; (8) Successful Completion of Road Test: must successfully complete a driver's road test or been issued a road test certificate.

24. Defendant Werner is, and has been for years, registered as a motor carrier and broker with a U.S. Department of Transportation #53467.

25. Defendant Werner is, and always has been, required to verify a commercial driver's qualifications consistent with the aforementioned minimum standards before permitting a driver to operate a commercial motor vehicle on its behalf.

26. Defendant Goyat Trucking is, and has been for years, registered as a motor carrier with a U.S. Department of Transportation #3195079.

27. Defendant Goyat Trucking is, and always has been, required to verify a commercial driver's qualifications consistent with the aforementioned minimum standards before permitting a driver to operate a commercial motor vehicle on its behalf.

28. A significant barrier to regulation under FMCSA is existence of "chameleon carriers," which is a term applied to trucking companies that evade regulatory scrutiny and enforcement actions by FMCSA through strategically closing their trucking companies and then create new trucking companies with different names and DOT numbers to avoid penalties and negative safety records associated with the prior trucking companies.[1]

29. This process essentially wipes a company's and their drivers' slates clean and allows violations to go unnoticed and unregulated by the FMCSA, which in turn permits drivers with concerning driving histories–including numerous traffic violations, car accidents, and drug

[1] U.S. Gov. Accountability Office, GAO-15-433T, *Motor Carrier Safety: Improvements to Data-Driven Oversight Could Better Target High Risk Carriers*, 2 (2015), https://www.gao.gov/assets/670/668993.pdf.

and/or alcohol use–to continue driving.[2] Without any record of their negative and dangerous histories, these chameleon carriers and their drivers escape enforcement by the FMCSA and often go on to harm others, as studies have revealed that chameleon carriers pose an elevated risk of danger to the public because their drivers are significantly more likely to cause a car crash.[3]

30. Chameleon carriers on United States roadways have been a known issue at the federal level and in the trucking industry since at least 2008 (and arguably much longer) when the FMCSA implemented a vetting system in part to identify carriers with chameleon attributes immediately following a bus crash in Texas killing seventeen people and injuring many others caused by a chameleon carrier employing an unfit driver.[4]

31. In March 2012, the Unites States Government Accountability Office (hereinafter "GAO") conducted a study to determine the prevalence of chameleon carriers, how well FMCSA could identify these carriers given the investigative programs then in place, and what limitations FMCSA faced to take action against such carriers.[5] This study found that, between 2005 and 2010, 217 fatalities and 3,561 injuries were the result of crashes involving a carrier with chameleon attributes.[6] Further, "new applicants with chameleon attributes were three times more likely than all other new applicant carriers to be involved in a severe crash–one in which there was a fatality or injury."[7]

32. In April 2012, FMCSA codified a uniform federal standard for identifying chameleon carriers at 49 C.F.R. § 386.73. To determine whether a company is a chameleon carrier

[2] *What are Chameleon Carriers & Why are They Dangerous?* Truckers Report, https://www.thetruckersreport.com/news/chameleon-carriers-dangerous/ (last visited Apr. 24, 2026).
[3] Ian S. Abovitz, *Reckless "Chameleon Carriers" Wreak Havoc on Our Highways*, XIV NAT. L. REV. 114 (2026), https://natlawreview.com/article/reckless-chameleon-carriers-wreak-havoc-our-highways.
[4] U.S. Gov. Accountability Office, GAO-12-364, *Motor Carrier Safety: New Applicant Reviews Should Expand to Identify Freight Carriers Evading Detection* 1-2, 6, 19-24 (2012), https://www.gao.gov/assets/gao-12-364.pdf.
[5] *Id.* at 2.
[6] *Id.* at 17.
[7] *Id.* at 11-17.

under this statute, FMCSA may consider a variety of factors, including "[d]ates of company creation and dissolution or cessation of operations;" "[c]ommonality of officers and management personnel;" "[i]dentity of physical or mailing addresses, telephone, fax numbers, or email addresses;" "[c]ommonality of drivers and other employees;" and "[c]ontinuity or commonality of nature and scope of operations, including customers for whom transportation is provided[.]"[8]

33. Under 49 C.F.R. § 386.73, FMCSA is authorized to issue an out-of-service order and/or record consolidation order, investigate, commence proceedings, and issue a Final Agency Order preventing chameleon, or "reincarnated," carriers from continuing to operate.[9] If unhappy with the result, the aggrieved entity may seek administrative review or petition for recission.[10]

34. In June 2013, FMCSA submitted a report to Congress regarding "the implementation of a risk-based vetting methodology to identify chameleon carriers applying for operating authority" to provide an update on progress made since the 2012 GAO report.[11] FMCSA reported the development of the Application Review and Chameleon Investigation (ARCHI), which was a prototype vetting system developed in line with the recommendations of the GAO report to flag possible chameleon carriers.[12] The FMCSA has clarified, "[w]hile the vetting program and the process to deny operating authority focus on preventing chameleon carriers from entering the industry, enforcement standards apply not only to new applicants but also to existing carriers."[13]

---

[8] *See* 49 C.F.R. § 386.73(c)(1)-(13).
[9] *Id.* at (a)-(f).
[10] *Id.* at (g)-(h).
[11] S. Rep. No. 112-157 (2013), "The Implementation of a Risk-Based Vetting Methodology to Identify Chameleon Carriers Applying for Operating Authority," https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Implementation-of-Methodology-to-Identify-Chameleon-Carriers-Report-to-Congress-508.pdf.
[12] *Id.* at 1-3.
[13] *Id.* at 4.

35. In March 2015, Susan Flemming testified before a U.S. Senate Subcommittee on behalf of the GAO regarding FMCSA oversight improvements to identify chameleon carriers with the highest risk for causing a crash in the future.[14] In her testimony, Ms. Flemming addressed steps FMCSA has taken to improve safety regarding chameleon carriers, including establishing chameleon carrier vetting programs and the Compliance, Safety, Accountability (CSA) program.[15]

36. FMCSA thus has the authority to regulate brokers and carriers like Defendants Werner and Goyat Trucking and ultimately put them out of service if they fail to meet their legal obligations under the Act to complete qualifications checks and otherwise perform due diligence before selecting carriers and drivers to transport a load. Clearly, the existence of chameleon carriers and possible consequences of using such carriers are well-known in the trucking industry, as it has spurred federal studies, GAO opinions, codification, Senate testimony, and more. Defendant Werner is a longtime, large freight broker coordinating deliveries across the United States, and it was or should have been aware that chameleon carriers are a devastating concern in the trucking industry, which requires brokers like Werner to properly vet carriers and drivers hired to transport goods.

37. In the last few years, more and more news stories have emerged regarding the dangerousness of chameleon carriers. These news stories discuss lives lost or forever changed by significant injury as a result of the negligence of these chameleon carriers and expose brokers, like Werner, for failure to properly vet individuals driving on their behalf, thereby placing unfit drivers on the road which posed a significant risk of injury to others.[16]

---

[14] U.S. Gov. Accountability Office, GAO-15-433T, *Motor Carrier Safety: Improvements to Data-Driven Oversight Could Better Target High Risk Carriers*, (2015), https://www.gao.gov/assets/670/668993.pdf.
[15] *Id.* at 2
[16] *See e.g.*, Noi Mahoney, *Chameleon carriers pose threat to nation's roadways*, Freight Waves (July 18, 2022), https://www.freightwaves.com/news/chameleon-carriers-pose-threat-to-nations-roadways; *'Chameleon carriers' create danger on roads*, WRAL News (Feb. 22, 2016, updated Feb. 23, 2016), https://www.wral.com/story/-chameleon-carriers-create-danger-on-roads/15376321/; Steve Reilly, et al., *How dangerous trucking companies*

38. Similarly, Defendants Werner nor Goyat Trucking should have permitted Singh to operate a commercial motor vehicle on their behalf on November 29, 2024, or November 30, 2024.

39. Yet, on or about November 29, 2024, Defendant Singh took the wheel of a tractor owned by Defendant Goyat Trucking (bearing the USDOT #3195079), which was hauling a trailer owned by Defendant Werner (bearing the USDOT #53467).

40. As of November 29, 2024, and for a considerable amount of time prior to that date, Defendant Singh failed to meet the aforementioned driver qualification requirements, and Defendant Goyat Trucking displayed attributes of a chameleon carrier.

**History of Harpinder Singh**

41. Defendant Singh was an illegal, undocumented resident of the United States of America.

42. On or about January 9, 2017, Defendant Singh violated Virginia Code § 46.2-816 for following too closely resulting in a motor vehicle collision and was cited for doing so in Prince William County, Virginia.

43. On or about July 19, 2018, Defendant Singh was charged traveling 79 mph in a 70-mph zone in Smyth County, Virginia.

44. On or about September 3, 2020, Defendant Singh was charged for failing to obey highway signs when found sleeping on the shoulder of the roadway in Pulaski, Virginia.

45. On or about October 16, 2021, Defendant Singh was charged for failing to place red flags or flares relating to a stopped commercial motor vehicle in violation of Virginia Code § 46.2-111 in Roanoke County, Virginia.

---

*escape their past, change names and get back on the road*, CBS News Investigations (Apr. 19, 2026), https://www.cbsnews.com/projects/2026/chameleon-carrier-trucks/.

46. On or about March 3, 2022, Defendant Singh was charged with traveling more than fifteen miles per hour over the speed limit in Prince William County, Virginia.

47. On or about October 28, 2022, Defendant Singh was charged for failing to obey highway signs when found sleeping on the shoulder of the roadway in Montgomery/Christiansburg, Virginia.

48. On or about January 31, 2024, Defendant Singh was charged with driving in one lane/performing an unsafe lane change and failure to comply with equipment requirements in Navajo County, Arizona.

49. On February 12, 2024, Defendant Singh was charged with speeding over 10-mph over the speed limit, driving in one lane/performing an unsafe lane change, and failure to provide insurance in Pima County, Arizona.

50. On April 26, 2024, Defendant Singh was charged with operating his vehicle in an unsafe mechanical condition on the highway and driving in one lane/performing an unsafe lane change in La Paz County, Arizona.

51. On or about November 28, 2024, Defendant Singh was operating a commercial motor vehicle registered to Harnoor Transport, Inc. in Shenandoah County, Virginia when he caused a motor vehicle collision resulting in injuries to others when he was unable to stop in time for congested traffic, changed lanes, and struck the rear of a motor vehicle that then caused a chain of collisions. The principal place of business of Harnoor Transport, Inc. is Yuba City, California, which is in close proximity to Goyat Trucking's principal place of business in Fresno, California.

52. These charges and traffic offenses disqualified Defendant Singh from being permitted to operate a commercial motor vehicle or otherwise demonstrated his incompetence and dangerousness if permitted to do so.

**Collision on November 20, 2024**

53. On or about November 30, 2024, Defendant Singh was operating a tractor owned by Goyat Trucking while hauling a trailer owned by Werner. This was a different tractor with a different DOT number as compared to the tractor Singh was operating for Harnoor Transport, Inc. and crashed in Shenandoah County, Virginia just two days earlier.

54. On or about November 30, 2024, Defendant Singh was accompanied by a companion driver, Kamaljeet Singh, who also possessed a significant history of traffic violations, evidencing he too was unfit to operate a commercial motor vehicle.

55. Some time on November 30, 2024, before 12:15 AM, at least one traveler on I-81 near mile marker called 911 to report a disabled or immobile motor vehicle in the right, northbound travel lane.

56. This traveler, amongst others, with due care and attention were able to identify and avoid the disabled or immobile motor vehicle in the right-hand travel lane.

57. Sometime after 911 was called about the vehicle in the right-hand travel lane, Defendant Singh was operating the aforementioned tractor-trailer northbound on I-81 in the right-hand travel lane.

58. At that same time, Brown-Williams, was a passenger in the vehicle stopped in the right-hand land on Interstate 81 northbound near mile marker 81 in Wythe County, Virginia.

59. At approximately 12:15AM on the aforementioned date, the Goyat Trucking/Werner tractor-trailer, operated by Defendant Singh, crashed into the rear of the vehicle wherein Brown-Williams was seated.

60. Defendant Singh then veered to the left and struck the guardrail on the left side of Interstate 81 before the tractor-trailer he was driving overturned and caught fire.

61. The other vehicle was pushed, and Brown-Williams was ejected from the vehicle.

62. Brown-Williams was pronounced dead at the scene.

63. Defendant Singh and Kamaljeet Singh were then seen crawling out of the tractor after it overturned, attempted to steal a nearby vehicle, and then fled the scene on foot.

64. Police soon located Defendant Singh and his passenger at a nearby gas station.

65. When questioned by police, Defendant Singh and his passenger mislead law enforcement by telling them a woman was driving the tractor-trailer at the time of the collision and that she was subsequently taken to the hospital. Police left Defendant Singh and his passenger to attempt to find the alleged female driver at Wytheville Hospital. No such female driver existed.

66. Upon realizing that Defendant Singh and his passenger lied about the female driver, police went to the hotel in which they knew Defendant Singh and his passenger were staying for the night.

67. After additional questioning, Defendant Singh and his passenger were arrested and charged with felonies for violation of Virginia Code § 46.2-894 for fleeing the scene of an accident after causing the death of Brown-Williams.

## CAUSES OF ACTION

### COUNT I | NEGLIGENT AND RECKLESS HIRING OF DEFENDANT SINGH BY DEFENDANTS WERNER & GOYAT TRUCKING

68. Plaintiff hereby incorporates by reference every allegation asserted in this Complaint, as if fully set forth herein.

69. Defendant Werner or Defendant Goyat Trucking or both had a duty to act reasonably in selecting, hiring, and contracting with their drivers and other employees, agents, servants, and independent contractors, including Defendant Singh; promulgate and enforce policies, procedures, rules, and regulations to ensure their drivers and vehicles were reasonably

safe; and exercise reasonable care in entrusting their vehicles and equipment to responsible, competent, and qualified drivers to avoid injury to others and FMCSA enforcement.

70. In hiring or contracting with Defendant Singh, Defendants Werner or Goyat Trucking, or both, negligently and recklessly placed an unfit person in an employment, agency, or independent contractor situation involving an unreasonable risk of harm to others, including Brown-Williams.

71. Defendants Werner or Goyat Trucking, or both, were negligent and acted with a reckless disregard for the safety of other drivers and persons on the road by hiring Defendant Singh, a dangerous employee, agent, servant, or independent contractor that Defendants Werner and Goyat Trucking knew or should have known was dangerous and likely to harm others while driving, including Brown-Williams.

72. Under the FMCSR, Defendants Werner and Goyat Trucking were required to verify a commercial driver's qualifications consistent with the relevant minimum standards before hiring a driver to operate a commercial motor vehicle on their behalf, including investigating the driving and employment history of every employee, agent, servant, and independent contractor.

73. Prior to hiring Defendant Singh, Defendants Werner and Goyat Trucking knew or should have known upon reasonable investigation that Defendant Singh was not fit to drive tractor-trailers because he possessed and repeatedly demonstrated a dangerous propensity to commit traffic violations, engage in unsafe driving, and drive recklessly, thereby posing an unreasonable risk of significant harm to others, including Brown-Williams.

74. Furthermore, prior to hiring Defendant Singh, Defendants Werner and Goyat Trucking should have known that Defendant Singh was an undocumented immigrant without legal

status in the United States, making him ineligible for a commercial driver's license as required under the FMCSR.

75. Defendants Werner and Goyat Trucking were negligent and reckless in their hiring of or contracting with Defendant Singh by placing Singh in an employment or independent contractor position in which it was or should have been foreseeable that Singh posed a threat of injury to others due to his lack of valid licensure under the FMCSR in addition to his considerable record of traffic violations and citations, which should have been easily discovered by reasonable investigation.

76. The conduct and decision by Defendant Werner or Goyat Trucking, or both, to hire or contract with Defendant Singh as a driver in light of his demonstrably dangerous driving behavior amounts to willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others.

77. As a direct and proximate result of the foregoing acts of direct and vicarious liability, Brown-Williams lost her life.

78. The actions and omissions of Defendants Werner and Goyat Trucking demonstrate a conscious disregard of or indifference to the life, rights, or safety of Brown-Williams and others, which said Defendants knew or should have known was reasonably likely to result in injury, death, or other harm. Accordingly, Plaintiff demands punitive damages.

**COUNT II | NEGLIGENT AND RECKLESS RETENTION OF DEFENDANT SINGH BY DEFENDANTS WERNER & GOYAT TRUCKING**

79. Plaintiff hereby incorporates by reference every allegation asserted in this Complaint, as if fully set forth herein.

80. Defendant Werner or Defendant Goyat Trucking or both had a duty to act reasonably in retaining, instructing, training, and supervising their drivers and other employees,

agents, servants, and independent contractors, including Defendant Singh; promulgate and enforce policies, procedures, rules, and regulations to ensure their drivers and vehicles were reasonably safe; and exercise reasonable care in entrusting their vehicles and equipment to responsible, competent, and qualified drivers to avoid injury to others and FMCSA enforcement.

81. In continuing to employ the services of Defendant Singh, Defendants Werner or Goyat Trucking, or both, repeatedly, negligently, and recklessly placed an unfit person in an employment or independent contractor situation involving an unreasonable risk of harm to others, including Brown-Williams.

82. Defendants Werner and Goyat Trucking were negligent and acted with a reckless disregard for the safety of other drivers and persons on the road by continuing to retain Defendant Singh, a dangerous employee, agent, servant, or independent contractor that Werner and Goyat Trucking knew or should have known was dangerous and likely to harm others while driving, including Brown-Williams.

83. Under the FMCSR, Defendants Werner and Goyat Trucking were required to verify a commercial driver's qualifications consistent with the relevant minimum standards before retaining a driver to operate a commercial motor vehicle on their behalf, including investigating the driving and employment history of every employee, agent, servant, and independent contractor.

84. Prior Defendant Singh's retention, Defendants Werner and Goyat Trucking knew or should have known upon reasonable investigation that Defendant Singh was not fit to drive tractor-trailers because he possessed and repeatedly demonstrated a dangerous propensity to commit traffic violations, engage in unsafe driving, and drive recklessly, thereby posing an unreasonable risk of significant harm to others, including Brown-Williams.

85. Furthermore, prior to retaining Defendant Singh, Defendants Werner and Goyat Trucking should have known that Defendant Singh was an undocumented immigrant without legal status in the United States, making him ineligible for a commercial driver's license as required under the FMCSR.

86. Defendants Werner and Goyat Trucking were negligent and reckless in their retention of Defendant Singh by retaining Singh in an employment or independent contractor position in which it was or should have been foreseeable that Singh posed a threat of injury to others due to his lack of valid licensure under the FMCSR in addition to his considerable record of traffic violations and citations, which should have been easily discovered by reasonable investigation.

87. The foreseeable risk of future harm to other drivers and persons on the road, including Brown-Williams, was so grave that discharging Defendant Singh was the only reasonable response, yet Defendants Werner or Goyat Trucking, or both, continued to retain him.

88. The conduct and decision by Defendant Werner or Goyat Trucking, or both, to retain Defendant Singh as a driver in light of his demonstrably dangerous driving behavior amounts to willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others.

89. As a direct and proximate result of the foregoing acts of direct and vicarious liability, Brown-Williams lost her life.

90. The actions and omissions of Defendants Werner and Goyat Trucking demonstrate a conscious disregard of or indifference to the life, rights, or safety of Brown-Williams and others, which said Defendants knew or should have known was reasonably likely to result in injury, death, or other harm. Accordingly, Plaintiff demands punitive damages.

**COUNT III | NEGLIGENT AND RECKLESS SELECTION OF DEFENDANT GOYAT TRUCKING AND SINGH BY DEFENDANT WERNER**

91. Plaintiff hereby incorporates by reference every allegation asserted in this Complaint, as if fully set forth herein.

92. Operating a tractor-trailer of the size and weight of the load involved in the subject collision involves a significant risk of physical harm to others unless it is skillfully and carefully done.

93. Defendant Werner is regularly engaged in the business of shipping, brokering, and logistics.

94. Defendant Werner had a duty to use ordinary care to select a competent carrier to transport this load.

95. In hiring, selecting, and contracting with Defendants Goyat Trucking and Singh, Defendant Werner breached its duty by retaining a carrier with incompetent, unfit, and inexperienced drivers, contractors, or sub-haulers to arrange and/or transport this load.

96. Specifically, Defendant Werner negligently and recklessly placed an unfit company and its agents, employees, servants, or independent contractors, including Defendant Singh and Kamaljeet Singh, in an employment, agency, or independent contractor situation involving an unreasonable risk of harm to others, including Brown-Williams.

97. Prior to selecting Defendant Goyat Trucking and Defendant Singh, Defendant Werner was aware or should have been aware of the safety violations of both Defendant Singh and his companion driver, Kamaljeet Singh, and the dangerousness of Defendant Goyat Trucking's drivers, including Defendant Singh.

98. Defendant Werner knew or should have known upon reasonable investigation that Defendant Goyat Trucking displayed chameleon characteristics and failed to properly qualify

driver fitness, safety, and licensure such that their drivers, including Defendant Singh, were unfit to drive tractor-trailers and possessed the dangerous propensity to commit traffic violations, drive recklessly, and engage in unsafe driving, thereby posing an unreasonable risk of harm to others, including Brown-Williams.

99. Under the FMCSR, Defendant Werner was required to verify a commercial driver's qualifications consistent with the relevant minimum standards before permitting a driver to operate a commercial motor vehicle on their behalf, including investigating the driving and employment history of every employee, agent, servant, and independent contractor.

100. Defendant Werner was negligent and acted with a reckless disregard for the safety of other drivers and persons on the road by contracting with and hiring Defendant Goyat Trucking, a company with dangerous employees, agents, servants, and independent contractors, including Defendant Singh. Werner knew or should have known upon reasonable investigation that Goyat Trucking and their agents, employees, servants, and independent contractors were dangerous and likely to harm others, including Brown-Williams.

101. The incompetence, lack of fitness, and/or inexperience of Defendants Singh and Goyat Trucking were a proximate cause in the subject collection and the death of Brown-Williams.

102. The conduct and decision by Defendant Werner to select Defendant Goyat and Defendant Singh in light of Singh's demonstrably dangerous driving behavior, and the dangerous driving behavior of other Goyat Trucking drivers, amounts to willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others.

103. As a direct and proximate result of the foregoing acts of direct and vicarious liability, Brown-Williams lost her life.

104. Defendant Werner's actions and omissions were reckless and demonstrate a conscious disregard of or indifference to the life, rights, and/or safety of Brown-Williams and others, which Werner knew or should have known was reasonably likely to result in injury, death, or other harm. Accordingly, Plaintiff demands punitive damages.

**COUNT IV | NEGLIGENCE OF DEFENDANT SINGH AND VICARIOUS LIABILITY OF DEFENDANTS WERNER AND GOYAT TRUCKING**

105. Plaintiff hereby incorporates by reference every allegation asserted in this Complaint, as if fully set forth herein.

106. At the time of the subject collision, Defendant Werner or Goyat Trucking, or both, employed or contracted with Defendant Singh as a driver.

107. Defendant Singh was an employee, agent, servant, or independent contractor acting on behalf of and within the scope of his employment, agency, contract, or servitude, with Defendants Werner or Goyat Trucking, or both. Defendants Werner or Goyat Trucking, or both, are thus vicariously liable for the acts of Defendant Singh with respect to the subject collision.

108. Alternatively, Defendants Werner or Goyat Trucking, or both, had the right to exercise control over Defendant Singh's work in connection with the load and/or direct the manner in which the details of work were executed.

109. At all relevant times, Defendant Singh owed other drivers and passengers on the road, including Brown-Williams, the duty to operate the tractor-trailer he was driving with reasonable care, including but not limited to:

a. The duty to operate the vehicle safely with due regard to other drivers;

b. The duty to keep a proper lookout;

c. The duty to refrain from endangering life or property;

d. The duty to leave proper space between the tractor-trailer and other vehicles;

e. The duty to stay in a single lane until changing lanes can be done safely; see Va. § 46.2-804;

f. The duty to follow vehicles at a reasonable and prudent distance, having due regard to the speed of both vehicles and the traffic on, and conditions of, the highway, see Va. Code § 46.2-816;

g. The duty to not drive aggressively, see Va. Code § 46.1-852;

h. The duty to drive the tractor-trailer under proper control, see Va. Code § 46.2-853;

i. The duty to operate the tractor-trailer at a reasonable speed in light of the traffic conditions and posted speed limit (see Va. Code § 46.2-861 and Va. Code § 46.2-862);

j. The duty to not drive recklessly, see Va. Code § 46.1-852; and

k. The duty to otherwise operate the tractor-trailer in accordance with the laws, ordinances, and standard of care applicable to him in the Commonwealth of Virginia.

110. The General Assembly enacted the above referenced statutes for public safety, Brown-Williams belonged to a class of persons for whose benefit the statutes were designed to protect, and the injuries and death of Brown-Williams was the type of injuries against which the statutes were designed to protect.

111. Defendant Singh knew or should have known that other drivers and passengers were driving northbound on Interstate 81 and/or in the right-hand lane of Interstate-81, and that such drivers may be stopped in the road for a variety of reasons, including car trouble.

112. Other motorists were able to successfully avoid the car Brown-Williams was traveling in while it was disabled in the right-hand lane.

113. Defendant Singh breached his duty by operating his vehicle negligently and recklessly, including when he failed to keep a proper lookout and struck the vehicle Brown-Williams was in with the tractor-trailer he was driving.

114. As a direct and proximate result of the foregoing acts of negligence of Defendant Singh, Plaintiff's Decedent lost her life.

115. Defendants Werner or Goyat Trucking, or both, undertook the non-delegable duty to provide reasonably safe and competent transport of this load and breached that duty.

116. Defendant Werner or Goyat Trucking, or both, are vicariously liable for the negligence of Defendant Singh that proximately caused the death of Plaintiff's Decedent.

117. Defendant Singh's actions were reckless and demonstrate a conscious disregard of or indifference to the life, rights, and/or safety of Brown-Williams and others, which Defendant Werner knew or should have known was reasonably likely to result in injury, death, or other harm. Accordingly, Plaintiff demands punitive damages.

**DAMAGES**

118. As a direct and proximate result of Defendants' wrongful acts, Plaintiff and the statutory beneficiaries of the Estate of Sarah Ann Brown-Williams sustained the following damages, which they are entitled to recover from Defendants, jointly and severally, pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

a. Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

b. Compensation for reasonably expected loss of income of Brown-Williams,

c. Compensation for services protection, care, and assistance provided by Brown-Williams;

d. Reasonable funeral expenses; and

e. Punitive Damages.

**PRAYER FOR RELIEF**

Plaintiff prays this Court grant judgment in favor of Plaintiff against Defendants Werner, Goyat Trucking, and Harpinder Singh, jointly and severally, for compensatory damages in the amount of Forty-Five Million Dollars ($45,000,000.00) and punitive damages in the amount of One-Hundred Million Dollars ($100,000,000.00) plus pre- and post-judgment interest and other relief this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims, defenses, and issues.

Respectfully yours,

Dated: June 12, 2026

Kevin Biniazan | VSB No. 92109
Justin Sheldon | VSB No. 82632
Sarah G. Sauble | VSB No. 94757
BREIT BINIAZAN, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23541
757.622.6000 | Phone
757.299.8028 | Fax
Kevin@bbtrial.com | Email
Justin@bbtrial.com | Email
Sarah@bbtrial.com | Email
*Counsel for the Administrator of the Estate of Sarah Ann Brown-Williams*